UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RICHARD DERNARD BOZELL, JR.,

                Petitioner,

v.

CARMEN PALMER,

                Respondent.

_____/

Case No. 1:17-cv-301

Honorable Robert J. Jonker

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Richard Dernard Bozell, Jr., is incarcerated with the Michigan Department of Corrections at the Ionia Correctional Facility in Ionia, Michigan. Petitioner pleaded nolo contendere in the Calhoun County Circuit Court on December 2, 2014, to assault with intent to commit murder, Mich. Comp. Laws § 750.83, second-degree murder, Mich. Comp. Laws § 750.317, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. On December 29, 2014, the court sentenced Petitioner, as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to two concurrent prison terms of sixty to ninety years on the convictions for assault with intent to murder and murder, and a consecutive prison term of two years on the felony-firearm conviction.

On March 28, 2017,[1] Petitioner filed his initial habeas corpus petition raising two grounds for relief, as follows:

I.    The trial court erred by denying [Petitioner's] motion to withdraw no contest plea.

II.    [Petitioner] was denied the effective assistance of counsel, when trial counsel failed to seek enforcement of the sentence agreement that he made with [Petitioner].

(Pet., ECF No. 6, PageID.21-24.)  Respondent has filed an answer to the petition (ECF No. 12) stating that the grounds should be denied because Ground I lacks merit and Ground II is unexhausted.

Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## **Discussion**

### I.    Factual and Procedural Background

According to the evidence introduced at Petitioner's preliminary examination on July 31, 2014, Petitioner shot and killed the mother of his child, Tianna Hunt, and shot at, but missed, Tianna's sister, Jasmine Hunt.  Jasmine testified that Tianna

---

[1] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

and Petitioner had been in an on-and-off relationship for about two years and had a child together, but they were not seeing each other at the time of the incident. (Prelim. Exam. Tr., ECF No. 13-2, PageID.146.)  The relationship between the two was argumentative and abusive, and there had been violence in the past.  (*Id.*, PageID.146-147.)  On the evening of the shooting, Jasmine Hunt drove Tianna and their other sister, Denise Tate, to an outdoor birthday party.  (*Id.*, PageID.147-148.) Tianna and Jasmine got out of the car, but Denise remained inside the car.  (*Id.*, PageID.148, 150, 161.)  After Jasmine and Tianna had been at the party for fifteen or twenty minutes, Jasmine heard arguing and noticed that her sister was standing on the passenger side of a truck parked on the other side of the street from Jasmine's vehicle.  Tianna was arguing with Petitioner, who was driving the truck.  (*Id.*, PageID.149, 161.)  Jasmine walked over to see what was going on with her sister. She saw Petitioner and another man, Kylon, in the truck.  Kylon had assaulted Tianna a few weeks earlier.  Jasmine stayed by her sister to protect her.  (*Id.*, PageID.149.)  The argument between Tianna and Petitioner became increasingly loud, and people were not able to stop them from arguing until Bobbie, the mother of one of Jasmine's friends, came over and told Tianna to stop arguing.  (*Id.*, PageID.152.)  Before Tianna left, she grabbed the keys out of the truck's ignition and tossed them.  Jasmine helped Petitioner find the keys, which was accomplished in a matter of seconds.  (*Id.*, PageID.153-154.)

3

Tianna stood by Jasmine's car for a few minutes and talked to her two sisters. She then went across the street to visit her two children, who were in the house. After a short time, Jasmine went looking for Tianna and reached the door of the house just as Tianna was coming out. (*Id.*, PageID.154-155.)  Jasmine then went inside the house for less than five minutes. As Jasmine was coming outside again, she saw a group of people surrounding the truck, which had apparently returned.[1]  She approached and saw Tianna and Petitioner arguing again.  (*Id.*, PageID.155.) Petitioner was out of the car this time and was standing right next to Tianna.  Other people attempted to separate the two, and, when those efforts were unsuccessful, Jasmine told the group, "Just let them go and deal with it on their own." (*Id.*, PageID.156.)  Petitioner told Jasmine that, if she did not "get [her] sister out of the way that [her sister] was going to end up in a body bag and die in [Jasmine's] arms." (*Id.*)  Jasmine responded, "[I]f you shoot her you're going to have to kill me too or leave me as a witness."  (*Id.*, PageID.156-157.)

After this exchange, Tianna and Jasmine walked off, got in Jasmine's car, and prepared to leave.  Just as Jasmine was starting the car, Petitioner came up and snatched the keys out of the ignition.  (*Id.*, PageID.157.)  Jasmine chased after him for a few feet.  Petitioner then turned around and shot at Jasmine.  As soon as she

---

[1] The transcript of the preliminary examination is silent on whether Petitioner left in the truck and subsequently returned.  Defense counsel represented at the preliminary examination that Petitioner regretted returning to the location after leaving the first time. (Sentencing Tr., ECF No. 13-4, PageID.204.)

4

saw Petitioner shoot toward her, Jasmine began to run back toward her car.  (*Id.*, PageID.158.)  Once Petitioner shot at Jasmine, Tianna began running away.  (*Id.*, PageID.168.)  Petitioner then began running toward Tianna.  (*Id.*, PageID.158.) Jasmine saw him fire two shots at Tianna.  The first missed, and Tianna started running toward the neighbor's house.  Petitioner fired again, causing Tianna to spin around and fall.  (*Id.*, PageID.159.)  Petitioner walked off until he got to the corner, where he began to run.  (*Id.*, PageID.160.)

Deputy Medical Examiner Elizabeth Douglas testified that she conducted an autopsy on Tianna Hunt.  Hunt died as the result of a gunshot wound.  The bullet entered under her left arm and exited under her right arm, severing her spinal cord and causing other damage.  (*Id.*, PageID.176-177.)

Following the preliminary examination, Petitioner was bound over on six charges;  one count of open murder, Mich. Comp. Laws § 750.316c (Count 1); three counts of felony firearm, Mich. Comp. Laws § 750.227b (Counts 2, 4, and 6); one count of being a felon in possession of a firearm, Mich. Comp. Laws § 750.224f (Count 3); and one count of assault with intent to commit murder, Mich. Comp. Laws § 750.83 (Count 5).  (Prelim. Exam. Tr., ECF No. 13-2, PageID.183-185; Register of Action, ECF No. 13-1, PageID.137.)  In an amended information, Petitioner was charged as a fourth-offense felony offender, Mich. Comp. Laws § 769.12. (Register of Action, ECF No. 13-1, PageID.138.)

On the date set for trial, December 2, 2014, Petitioner pleaded no contest to Counts 1 (reduced to second-degree murder), 2 (felony firearm) and 5 (assault with intent to murder), in exchange for the dismissal of the other three counts. (*See* Plea Hr'g Tr., ECF No. 13-3, PageID.189-190.) After conducting a full colloquy, the court accepted the no-contest plea. (*Id.*, PageID.197.)

The court sentenced Petitioner on December 29, 2014. At the sentencing hearing, defense counsel argued for a minimum sentence at the low end of the sentencing guidelines range, in light of Petitioner's acceptance of responsibility and his written statement about what he did. (Sentencing Tr., ECF No. 13-4, PageID.203-205.) The prosecutor opposed a sentence at the low end of the range, arguing instead for a sentence at the high end of the range. The prosecutor focused on Petitioner's extensive juvenile and adult record, which included multiple crimes of violence. The prosecutor also argued that, rather than showing acceptance of responsibility, Petitioner's statement showed that Petitioner had attempted to shift the blame for the shooting to Jasmine Hunt. (*Id.*, PageID.208-210.)

The court sentenced Petitioner to a prison term of sixty to ninety years, based on Petitioner's history of physically and emotionally abusing and terrorizing those who loved him, the fact that he left the scene and returned with a firearm, and his extensive history of criminal violations and probation failures. (*Id.*, PageID.210-211.)

Petitioner filed a motion to withdraw the plea on June 24, 2015, in which he made the following arguments:  his trial attorney was ineffective in explaining the

6

case and the sentencing agreement to Petitioner; Petitioner wanted an opportunity

to explain his case to a jury and to correct false statements; Petitioner understood

from his attorney that his maximum minimum sentence would be thirty years; and

the plea was illusory because the sentence effectively amounted to life imprisonment.

(Register of Action, ECF No. 13-1, PageID.140; Pro Per Mot. to Withdraw Plea, ECF

No. 13-6, PageID.243.)  After hearing oral argument on July 27, 2015, the trial court

denied the motion on July 31, 2015.  The court held that the guidelines range was for

a  minimum  sentence  of  365  months  to  1200  months  and  that  Petitioner  was

sentenced to sixty years, which fell within the guidelines range.  The court noted that

no  sentencing  agreement  was  part  of  the  plea  deal.  (Cir. Ct. Ord. Den. Mot. to

Withdraw Plea, ECF No. 13-6, PageID.244.)  The court declined to hold an evidentiary

hearing on the effectiveness of counsel, because, even if defense counsel made an

incorrect prediction about the outcome of the case, it did not constitute ground for

relief.  The court noted that Petitioner had expressly denied the existence of any sort

of sentencing promise, had specifically stated his understanding that by entering a

no-contest plea he was giving up his right to claim that the plea was the result of

promises or threats that were not disclosed at the plea hearing, and had reiterated

his intent to plead no contest after again being told that there existed no sentencing

agreement.  (*Id.*, PageID.245.)

Petitioner filed a delayed application for leave to appeal, raising a single issue:

the trial court erred in denying his motion to withdraw his plea.  That claim, however,

raised the same series of arguments presented to the trial court:  that Petitioner's plea was not voluntary, because he believed he would receive a sentence of thirty years; that the plea was illusory because he received what amounted to a life sentence; that he wanted to explain his side of the story to a jury; and that trial counsel was ineffective in falsely promising a thirty-year minimum sentence.  (Pet'r's Br. in Supp. of Appl. for Leave to Appeal, ECF No. 13-6, PageID.239-240.)  In an order issued on October 1, 2015, the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented.  (Mich. Ct. App. Ord., ECF No. 13-6, PageID.225.)

Petitioner filed an application for leave to appeal to the Michigan Supreme Court, raising the issue presented to the Michigan Court of Appeals.  Petitioner also separately raised a claim of ineffective assistance of counsel, ostensibly for the first time.  Nevertheless, the arguments concerning counsel's effectiveness were identical to those presented in both the trial court and the court of appeals.  (*See* Appl. for Leave to Appeal, ECF No. 13-7, PageID.279-282.)   In an order issued on March 29, 2016, the supreme court denied leave to appeal, because it was not persuaded that the question should be reviewed by the court. (Mich. Ord., ECF No. 13-7, PageID.272.)

II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535

8

U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication

9

on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well

as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Analysis

In his first ground for habeas relief, Petitioner argues that the trial court should have granted his motion to withdraw the plea.  His arguments in the Michigan courts and in this Court include both a claim under Mich. Ct. R. 7.205(F) and a claim that his plea was not knowingly and voluntarily entered, because he believed that he would receive a sentence of 30 years, because his plea deal was illusory, because he wanted to explain his side of the story to a jury, and because counsel rendered ineffective assistance when he inaccurately advised Petitioner about his likely sentence.  Petitioner's second habeas ground simply reiterates his argument that trial counsel was ineffective when he misadvised Petitioner about the sentence he was likely to receive.

**A.    Challenge Under Mich. Ct. R. 7.205(F)**

To the extent that Petitioner claims that the trial court erred when it denied Petitioner's motion to withdraw the plea under Mich. Ct. R. 7.205(F), Petitioner's claim is not cognizable on habeas review.  A state defendant has no constitutionally guaranteed right to withdraw a guilty or no-contest plea.  *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S.

11

238 (1969).  A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991).  Consequently, the question whether Petitioner should have been allowed in the court's discretion to withdraw his plea under state-court rules is not reviewable in habeas corpus.

### B.    Constitutional Challenges to the Guilty Plea

Petitioner raises a variety of challenges to the voluntariness of his guilty plea. It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267.  A plea not voluntarily and intelligently made has been obtained in violation of due process and is void.  *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Petitioner's claim does not challenge the power of the state to bring him into court.  Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into.  *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and

intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea. Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*. Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty. Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted).

Petitioner argues that his no-contest plea was not knowing or voluntary for several reasons. The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Alford*,

400 U.S. at 31 ("Strong evidence of guilt may suffice to sustain a conviction on an *Alford* plea, and may be essential under Fed. R. Crim. P. 11, but it is not necessary to comply with the Constitution."); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir.1977);  *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir.1975);  *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975);  *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find constitutionally valid guilty plea, several requirements must be met.  The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be

accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).  Finally, the defendant must have available the advice of competent counsel.  *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).  The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made.  *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.");  *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).  Ineffective assistance of counsel will render a plea of guilty involuntary.  *See Hill*, 474 U.S. at 56-57.

Petitioner does not argue that he was not competent to enter his no-contest plea.  Instead, he argues that his plea was involuntary because he did not understand the consequences of his plea, he was promised a minimum sentence of thirty years, the plea agreement was illusory, and his attorney was ineffective.  When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding.  *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state

court findings of fact and to the judgment itself.  *Id.*  A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings.  *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Petitioner's claims – that he did not understand the consequences of his plea and believed that he would receive a minimum sentence of thirty years – are belied by the record.  The transcript of the plea agreement demonstrates that Petitioner was fully advised about the consequences of his plea, including the potential sentences he faced, and he repeatedly denied on the record that he was made additional promises about his sentence.  (Plea Hr'g Tr., ECF No. 13-3, PageID.192-193.)  The trial court advised Petitioner that, in light of his fourth-felony-offender status, the maximum sentence on both the murder and assault-with-intent-to-murder charges was life imprisonment, the maximum on the felony-firearm offenses was fifteen years, and the maximum on the felon-in possession offense was five years.  (*Id.*, PageID.189-190.)  Petitioner stated under oath that he had read the advice-of-rights form, had understood the rights he was waiving, and had signed the form.  (*Id.*, PageID.191-192.)  He also expressly acknowledged that, in exchange for his plea, he received no

promises other than the dismissal of the three counts and the reduction of open murder to second-degree murder.  (*Id.*, PageID.192-193.)

As a factual basis for the plea, the prosecutor relied on the police reports and the transcript of the preliminary examination, which he also summarized on the record.  (*Id.*, PageID.195-196.)  The court accepted the facts recited by the prosecutor as true.  (*Id.*, PageID.196.)  At this juncture, the court again specifically advised Petitioner that there was no agreement by the court, the prosecutor, or defense counsel as to any possible sentence.  Having reiterated that Petitioner was being made no promises about his sentence, the court again asked whether Petitioner still wanted to plead to the charges.  Petitioner reiterated his intent to plead no contest. (*Id.*, PageID.197.)  The court therefore accepted the plea.  (*Id.*)

On this record, Petitioner is bound by his statements at the plea hearing. Petitioner acknowledged the possible sentences he faced and expressly denied the existence of other promises.  In the face of these admissions, Petitioner fails to meet his "heavy burden" of showing that his plea was not knowing or voluntary.  *Garcia*, 991 F.2d at 326-28.

Petitioner's claim that he really wanted to go to trial in order to tell his side of the story is also foreclosed by the plea transcript.  Petitioner acknowledged at the plea hearing that he had been advised of the rights he was waiving, including the right to a jury trial.  (Plea Hr'g Tr., ECF No. 13-3, PageID.191-192.)  He later expressly acknowledged that he was aware that he was giving up his right to a trial

by either a jury or a judge.  (*Id.*, PageID.193.)  Yet he twice indicated that he wanted to plead no contest.  (*Id.*, PageID.194, 197.)  Petitioner is bound by his statements on the record at the plea hearing.

Petitioner next argues that his plea was illusory.  If a prosecutor's promise is illusory, then a plea is involuntary and unknowing.  *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000).  Where a defendant is "fully aware of the likely consequences" of a plea, however, it is not unfair to expect him to live with those consequences.  *Mabry*, 467 U.S. at 511.  As the trial court held in denying Petitioner's motion to withdraw the plea, the prosecutor's promise to Petitioner under the plea agreement was not illusory.  Although the trial court actually imposed a sentence higher than the one Petitioner may have wished or hoped for, Petitioner avoided being convicted of first-degree murder, which would have resulted in a mandatory sentence of life imprisonment.  And, on the facts of the case, which showed that Petitioner had returned to the scene with a weapon after the original argument had stopped, conviction on the charge of first-degree murder was entirely likely.  Under the agreement, Petitioner pleaded to a lesser offense and had the opportunity to argue for a sentence at the low end of the guidelines, despite the fact that his argument was ultimately not accepted by the court.

Furthermore, Petitioner expressly agreed to plead guilty knowing that he had no sentencing agreement.  Under these circumstances, Petitioner received real substantive benefits in consideration of his plea, and those benefits matched those he

18

had bargained for.  His plea therefore was not illusory.  *See McAdoo,* 365 F.3d at 498 (where a defendant receives the "bargained for benefit" the plea is not illusory and he is not entitled to habeas relief).

Petitioner's final argument is that his trial attorney rendered ineffective assistance of counsel by inaccurately advising Petitioner that he would receive a thirty-year minimum sentence. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the

defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.* at 59.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the

difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner cannot demonstrate that counsel's performance affected the outcome of the plea process.   If counsel's failings caused Petitioner any misperceptions regarding the range of outcomes, the trial court corrected those misperceptions at the plea hearing.  *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) ("[T]he state trial court's proper colloquy can be said to have cured any misunderstanding Ramos may have had about the consequences of his plea.")  Where a defendant indicates on the record that he understands the specific consequences of his plea, he is "'bound by his statements[.]'" *Ramos*, 170 F.3d at 566 (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)).  To hold otherwise would "[render] the plea process meaningless . . . ."  *Id.*  Indeed, "the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before" the Court.  *Id.*  Accordingly, Petitioner has failed to show that he suffered any prejudice as a result of counsel's alleged ineffectiveness.

For all these reasons, Petitioner's habeas grounds are meritless.  The state courts' determinations of facts were entirely reasonable on the record, and the results were neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

## Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

## **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.


Dated:  May 8, 2018                              /s/ Phillip J. Green
                                                  Phillip J. Green
                                                  United States Magistrate Judge


## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).